**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SHENZHEN HEYUE TRADE CO., LTD., Plaintiff, v. NICPROARTPAINT.COM, Defendant. | § § § § § § § § § § § | **Civil Action No. 4:26-cv-01716** **JURY TRIAL DEMANDED** |

**COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE AFFILIATION, CYBERSQUATTING, AND UNFAIR COMPETITION**

Plaintiff Shenzhen Heyue Trade Co., Ltd. ("Plaintiff") brings this action against the presently unidentified individual or entity operating or controlling the commercial website at www.nicproartpaint.com (the "Accused Website"), identified in the caption as NICPROARTPAINT.COM ("Defendant"). Plaintiff alleges facts within its knowledge on that basis and facts concerning Defendant and matters outside its knowledge upon information and belief following a reasonable pre-suit investigation.

## INTRODUCTION

1. This action concerns a commercial website that has adopted Plaintiff's NICPRO name as the dominant element of its Internet domain and presents an extensive catalog of NICPRO-branded art, drawing, and writing products. Its use of NICPRO extends beyond individual product names to the website's overall

commercial identity.

2. Defendant displays the NICPRO mark on its storefront and on images of product packaging, uses NICPRO product names, model and size designations, and promotional materials, and invites customers to purchase the advertised merchandise at stated prices. The domain name, branding, and coordinated presentation are likely to convey that the Accused Website is operated, sponsored, or approved by the NICPRO brand owner.

3. The website includes offerings for mechanical pencils, carpenter pencils, paintbrushes, acrylic paints, watercolor paints, and other goods that correspond directly to the goods identified in Plaintiff's United States trademark registrations. *See* **Exhibit A**.

4. Multiple listings display product images and promotional graphics identical in composition to images appearing in NICPRO-branded Amazon product listings. For example, six promotional compositions advertising a 12-piece pastel watercolor brush set appear in both sources.

5. Plaintiff's pre-suit investigation included two paid test orders for NICPRO-branded products, one directed to Plano, Texas, and another directed to Downers Grove, Illinois. The resulting order confirmations were issued by separately branded checkout storefronts, Lucy Mirelle and FEVER MUSE. A subsequent investigative checkout session initiated through the Accused Website reached a third-party checkout page branded "Mollysvibe"; no payment was completed in that session.

6. Plaintiff has not authorized Defendant to operate an official NICPRO online store, to hold itself out as Plaintiff or an affiliated NICPRO seller, or to imply that Plaintiff sponsors, approves, or controls Defendant's website and checkout activities.

7. Plaintiff seeks relief for Defendant's use of the NICPRO Marks to present the Accused Website as an apparently official or affiliated commercial operation, thereby creating a likelihood of confusion as to source, sponsorship, approval, or affiliation. Plaintiff asserts jurisdiction under Rule 4(k)(1)(A) and, alternatively for its federal claims, Rule 4(k)(2).

**THE PARTIES**

8. Plaintiff Shenzhen Heyue Trade Co., Ltd. is a company organized under the laws of the People's Republic of China, with its principal place of business in Shenzhen, Guangdong, China. USPTO records identify Plaintiff as the owner of the NICPRO and NICPRO PAINTS trademark registrations described below. True and correct copies of the corresponding USPTO registration records are attached as **Exhibit B**.

9. Defendant NICPROARTPAINT.COM ("Defendant") is the designation used in this action to identify the presently unidentified individual or legal entity that, upon information and belief, operates or controls the Accused Website. Defendant's true legal name, organizational form, and principal place of business are presently unknown to Plaintiff.

10. Upon information and belief, Defendant is responsible for the Accused

Website's unauthorized use of the NICPRO Marks, including the display of those marks in the website's branding, product listings, photographs, and promotional materials, and for offering purported NICPRO-branded products for sale through the Accused Website.

11. Plaintiff conducted a pre-suit investigation into Defendant's identity, including reviewing publicly available domain registration records and documenting the Accused Website's product listings, checkout process, and payment transactions. The publicly available ICANN registration records for nicproartpaint.com identify China as the registrant contact country and Sichuan as the reported region, but do not disclose the registrant's identity. *See* **Exhibit C**.

12. Plaintiff's investigation also identified additional domains associated with the Accused Website's checkout process and product-image hosting. During the Illinois test purchase, the checkout process passed through listanstyle.com and brinaratrek.top before reaching fevermuse.com. Plaintiff also identified lucymirelle.com, which shares certain registration details with fevermuse.com, and observed that product images on the Accused Website were served from cdn.quick-backup.top, a subdomain of quick-backup.top. Plaintiff obtained publicly available registration records for these five domains. *See* **Exhibits D–H**. The identities of their operators and their relationships with Defendant have not yet been established.

13. Defendant is not authorized by Plaintiff to operate the Accused Website under the NICPRO Marks or to represent the Accused Website as owned,

operated, sponsored, or approved by Plaintiff. Plaintiff intends to seek discovery concerning Defendant's identity and, when that information becomes available, to amend this Complaint to identify Defendant by its true legal name.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over Plaintiff's federal claims under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a). The Court also has jurisdiction over Plaintiff's related Texas common-law trademark infringement and unfair competition claims under 28 U.S.C. § 1338(b) and, alternatively, supplemental jurisdiction under 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

15. This Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(1)(A) and the Texas long-arm statute because Defendant has purposefully directed commercial activities toward Texas, including the Eastern District of Texas, and Plaintiff's claims arise out of or relate to those activities.

16. Upon information and belief, Defendant operates the Accused Website as an interactive online commercial storefront directed to consumers in the United States, including Texas. The Accused Website advertises NICPRO-branded products in English, displays prices in U.S. dollars, provides shopping cart and checkout functions, and accepts orders with shipping destinations in the United States.

17. On November 7, 2026, Plaintiff completed a test purchase for delivery

to Plano, Texas, within Collin County and the Eastern District of Texas. The purchase was initiated through the Accused Website and resulted in a $21.99 payment processed through a checkout page bearing the name "Lucy Mirelle." The resulting order confirmation identified Plano, Texas, as the shipping destination. *See* **Exhibit I**.

18. Plaintiff's claims arise out of or relate to Defendant's commercial use of the NICPRO Marks in connection with the Accused Website, including its use of the marks in the website's domain name, branding, product listings, promotional materials, and purchasing process. Defendant's alleged infringement includes presenting the Accused Website to consumers in Texas as a NICPRO-branded commercial storefront and offering purported NICPRO products for purchase through that storefront.

19. In the alternative, this Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2) with respect to Plaintiff's federal claims. Publicly available ICANN registration records identify China as the registrant contact country for nicproartpaint.com, although the registrant's identity and Defendant's residence remain unknown. *See* **Exhibit C**. To the extent Defendant is not subject to personal jurisdiction in the courts of general jurisdiction of any State, Plaintiff relies on Defendant's contacts with the United States as a whole under Rule 4(k)(2).

20. Upon information and belief, Defendant has purposefully directed commercial activities toward the United States by operating the Accused Website to

advertise and offer NICPRO-branded products to U.S. consumers. On October 16, 2026, a test purchase initiated through the Accused Website for delivery to Downers Grove, Illinois, resulted in a completed payment through a checkout page bearing the name "FEVER MUSE." *See* **Exhibit J**. On November 7, 2026, a separate test purchase initiated through the Accused Website for delivery to Plano, Texas, resulted in a completed payment through a checkout page bearing the name "Lucy Mirelle." *See* **Exhibit I**. Plaintiff's federal claims arise out of or relate to Defendant's U.S.-directed use of the NICPRO Marks and associated commercial activities. Exercising personal jurisdiction under Rule 4(k)(2) is consistent with the United States Constitution and laws.

21. Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(c)(3) to the extent Defendant is not a resident of the United States. Alternatively, Plaintiff alleges that venue is proper under 28 U.S.C. § 1391(b)(2) because Defendant's allegedly infringing commercial activities include offering NICPRO-branded products for purchase in this District and accepting and processing payment for a transaction directed to Plano, Texas. Plano is located in Collin County, within the Sherman Division of this District.

## FACTUAL ALLEGATIONS

### A. Plaintiff's NICPRO brand and trademark rights

22. Plaintiff owns the NICPRO trademarks, which are used in connection with a range of art, painting, drawing, and writing products, including pencils, paintbrushes, acrylic paints, watercolor paints, and related supplies. NICPRO-

branded products are marketed and offered for sale in the United States through various online retail channels, including Amazon and Walmart. Representative NICPRO-branded Amazon product listings are reflected in **Exhibits K–O**.

23. Plaintiff owns the following valid and subsisting federal trademark registrations on the Principal Register of the United States Patent and Trademark Office (collectively, the "NICPRO Marks"):

| **Registration No. / Mark** | **Registration date** | **Relevant registered goods** |
|---|---|---|
| 6209989<br>Stylized mark<br>NicPro | Dec. 01, 2020 | Class 016: Automatic pencils; Canvas for painting; Drawing compasses; Note books; Paintbrushes; Painters' easels; Pencil leads; Pencils. |
| 5585859<br>Nicpro | Oct. 16, 2018 | Class 016: Drawing brushes; Drawing pens; Paintbrushes; Pencils. |
| 7815306<br>Stylized mark<br>NicPro<br>●●●● Paints | Jun. 03, 2025 | Class 002: Paints; Pigments; Acrylic paints; Fabric paints; Gum turpentine; Metal foil for use in painting, decorating, printing and art; Oil paints; Powdered paints; Synthetic resin paints; Watercolor paints. |
| 6582522<br>Nicpro | Dec. 07, 2021 | Class 002: Acrylic paints; Fabric paints; Gum turpentine; Metal foil for use in painting, decorating, printing and art; Oil paints; Paints; Pigments; Powdered paints; Synthetic resin paints; Watercolor paints. |

24. The NICPRO Marks cover various art, painting, drawing, and writing products, including paints, paintbrushes, pencils, and related supplies, as specified in the respective registrations. *See* **Exhibit B.**

25. The USPTO status reports generated November 9, 2026, identify these four registrations as live and registered in Plaintiff's name. Under 15 U.S.C. §§

1057(b) and 1115(a), the registrations provide prima facie evidence of the marks' validity, ownership, and Plaintiff's exclusive right to use them in commerce for the specified goods, subject to the statutory qualifications and defenses. *See* **Exhibit B.**

26. Registration No. 7,815,306 covers the NICPRO PAINTS design mark, consisting of the stylized wording "NicPro," four dots, and the word "Paints." As alleged below, the Accused Website displays this design mark on images of advertised painting products. The foregoing marks and Plaintiff's NICPRO name as used in commerce are referred to as the "NICPRO Marks."

**27.** Plaintiff has developed valuable goodwill in its NICPRO Marks through its sales, promotion, and use of the marks on its products and associated marketing materials.

**B. Defendant Presents the Accused Website as a NICPRO-Branded Commercial Storefront**

28. Upon information and belief, Defendant operates and controls the website located at the Accused Website, through which Defendant advertises, offers for sale, and purports to sell a wide range of NICPRO-branded products to consumers throughout the United States.

29. The Accused Website prominently displays the NICPRO logo as its principal branding, features NICPRO-branded products in its homepage banner, and organizes its navigation around categories of NICPRO products. The website further represents that it provides commercial services, including delivery, customer support, secure payment, and returns. Its footer identifies the storefront as "Nicpro," describes the business under that name, and displays the copyright

notice "© 2026 Nicpro." Through these representations, Defendant presents the Accused Website as a NICPRO-branded commercial storefront rather than an independent, unaffiliated retailer. Representative excerpts from the top and bottom of the Accused Website's homepage are reproduced below.







30. The Accused Website contains an extensive catalog of products bearing

the NICPRO Marks, including mechanical pencils, drawing and painting brushes, acrylic paints, watercolor paints, stationery sets, and related art supplies. Its product listings display NICPRO-branded photographs, descriptions, prices, product variations, and purchasing functions, including "Add to Cart" and "Checkout." *See* **Exhibit A**.

31. Plaintiff's investigation revealed that numerous product listings on the Accused Website display product photographs, packaging images, and promotional materials identical or substantially similar to those appearing in existing NICPRO-branded product listings on Amazon. Defendant's use of these materials, together with its extensive use of the NICPRO Marks, contributes to the misleading impression that the Accused Website is operated or authorized by Plaintiff.

32. By way of example, Plaintiff identified numerous products on the Accused Website that correspond to NICPRO-branded products advertised on Amazon, including products bearing identical or substantially identical photographs and promotional materials. The following are selected representative examples.

33. **NICPRO 12PCS Watercolor Paint Brush Sets.** The Accused Website advertises the same NICPRO-branded watercolor paintbrush sets appearing in Amazon listings. For the pastel version, Plaintiff identified at least six identical or virtually identical product and promotional images, including brush-size charts, product-feature illustrations, and watercolor demonstrations. For the black version, the Accused Website likewise reproduces identical or substantially identical product imagery, including the brush arrangements and water-absorption

demonstrations, while certain other promotional images contain modified versions of the same visual materials. A representative side-by-side comparison appears below. *See* **Exhibit K**.

**Amazon Image**




Ex. K at 9

**Accused Website Image**




Ex. K at 35

34. **NICPRO Waterproof Notebook with 1.3mm Mechanical Pencil Set.** The Accused Website advertises a NICPRO-branded waterproof notebook and mechanical pencil set corresponding to the product series offered on Amazon. The Accused Website reproduces identical or virtually identical product photographs and promotional images, including illustrations of the waterproof stone-paper notebook, TPU fabric cover, product features, and outdoor applications. The corresponding images contain the same NICPRO branding, product arrangements, graphic elements, and descriptive text. A representative side-by-side comparison appears below. *See* **Exhibit L**.

**Amazon Image** **Accused Website Image**




Ex. L at 9




Ex. L at 20

35. **NICPRO 52PCS Aesthetic School Supplies Set.** The Accused Website advertises a NICPRO-branded stationery set corresponding to products offered on Amazon and reproduces identical or virtually identical product photographs and promotional images, including images depicting the pencil case, mechanical pencils, gel pens, ballpoint pens, highlighters, and related accessories. The corresponding images feature the same NICPRO branding, product arrangements, graphic elements, and promotional text. A representative side-by-side comparison appears below. *See* **Exhibit M**.

**Amazon Image**




Ex. M at 24

**Accused Website Image**




Ex. M at 33

36. **NICPRO 38PCS Aesthetic School Supplies Set.** The Accused Website advertises the same NICPRO-branded 38-piece mechanical pencil and stationery set appearing on Amazon and reproduces at least six identical or virtually identical promotional images. These images include detailed illustrations of the mechanical pencils, lead refills, pencil case, and product features, as well as lifestyle photographs depicting the products in use. The corresponding images contain the same NICPRO branding, product arrangements, graphic elements, and promotional text. A representative side-by-side comparison appears below. *See* **Exhibit N**.

| **Amazon Image** | **Accused Website Image** |
|---|---|
|  |  |
| Ex. N at 12 | Ex. N at 18 |

37. **NICPRO Craft Organizer Tote Bag.** The Accused Website advertises the same NICPRO-branded craft organizer tote bag appearing on Amazon and reproduces multiple identical or virtually identical product photographs and promotional images. These include images depicting the bag's design, dimensions, intended uses, and use in everyday settings. The corresponding

images feature the same NICPRO branding, product arrangements, graphic elements, backgrounds, and promotional text. *See* **Exhibit O**.

**Amazon Image**




Ex. O at 11

**Accused Website Image**




Ex. O at 19

38. The foregoing examples represent only a small selection of the NICPRO-branded products advertised on the Accused Website. Plaintiff's investigation identified numerous additional product listings displaying the NICPRO Marks, product photographs, packaging images, and promotional materials identical or substantially similar to those appearing in existing NICPRO-branded product listings.

39. Upon information and belief, Defendant knowingly and systematically copied NICPRO-branded product images and promotional materials for use throughout the Accused Website. Defendant's conduct extends beyond the use of the NICPRO Marks on individual product listings. By incorporating the NICPRO Marks into its domain name, website branding, product descriptions, photographs, packaging images, and promotional materials, Defendant has presented the

Accused Website as a commercial storefront associated with Plaintiff and its NICPRO brand.

40. Defendant's extensive use of the NICPRO Marks, together with its reproduction of identical or virtually identical product photographs and promotional materials, is likely to cause consumers to believe that the Accused Website is owned, operated, sponsored, approved, or authorized by Plaintiff, or otherwise affiliated with Plaintiff. Plaintiff has not authorized Defendant to operate the Accused Website or represent it as a NICPRO-branded storefront.

**C. Defendant's Online Sales and Transactions with U.S. Consumers**

41. On October 16, 2026, Plaintiff conducted a test purchase through the Accused Website for delivery to Downers Grove, Illinois. The order involved a NICPRO-branded paintbrush set advertised at $11.99. The Accused Website displayed the product under NICPRO branding and provided shopping cart and checkout functions through which the purchaser initiated the transaction. See **Exhibit J** at 2–4.

42. During the Illinois test purchase, the checkout process redirected the purchaser from the Accused Website through listanstyle.com and brinaratrek.top before reaching a checkout page hosted at fevermuse.com and bearing the commercial name "FEVER MUSE." The redirection sequence is documented in **Exhibit J** at 5–7.

43. Although the checkout page bore the name "FEVER MUSE," it continued to display the NICPRO-branded product originally selected on the

Accused Website, together with the product price of $11.99, a shipping charge of $10.00, and a total of $21.99. The checkout page retained the purchaser's shipping destination in Downers Grove, Illinois. The transaction was completed, and the resulting FEVER MUSE-branded order confirmation reflected the NICPRO-branded product and a $21.99 Visa payment. *See* **Exhibit J** at 7–9.

44. On November 7, 2026, Plaintiff completed another test purchase initiated through the Accused Website for delivery to Plano, Texas. The transaction resulted in an order confirmation issued through a checkout page bearing the unrelated commercial name "Lucy Mirelle." The confirmation identified Plano, Texas, as the shipping destination and reflected a $21.99 Visa payment. *See* **Exhibit I** at 2–3.

45. Plaintiff's investigation further revealed that fevermuse.com and lucymirelle.com publicly presented themselves as online women's apparel retailers, rather than retailers of NICPRO-branded art supplies. Nevertheless, checkout and order-confirmation pages associated with these domains were used in transactions initiated through the NICPRO-branded Accused Website. Representative screenshots of these websites, captured on November 11, 2026, are attached as **Exhibit P**.

46. On November 13, 2026, Plaintiff conducted a separate investigative checkout session through the Accused Website for a NICPRO-branded watercolor paint kit advertised at $59.99, with a designated shipping destination in Plano, Texas. The Accused Website's checkout page displayed free shipping and a total of

$59.99. After Plaintiff proceeded with the checkout process, the browser was directed through a payment gateway at katrie.site to a checkout page at mollysvibe.com bearing the unrelated commercial name "Mollysvibe." The Mollysvibe checkout page retained the purchaser's Plano shipping information but displayed a $9.00 standard shipping charge, increasing the total to $68.99. No payment was completed during this session. Publicly available ICANN registration records show that mollysvibe.com was registered on June 26, 2026, through Xiamen 35.com Information Co., Ltd., and uses the same nameservers as fevermuse.com and lucymirelle.com. The records further show that katrie.site was registered on November 5, 2026. *See* **Exhibit Q**.

47. The foregoing transactions demonstrate that consumers initiating purchases through the NICPRO-branded Accused Website were directed to checkout and order-confirmation pages bearing unrelated commercial names. The two completed test purchases resulted in order confirmations for delivery to U.S. addresses, including Texas and Illinois.

**D. Defendant's Accused Products Correspond to Goods Covered by Plaintiff's Registered Trademarks**

48. The Accused Website advertises an extensive catalog of NICPRO-branded products, including paints, paintbrushes, mechanical pencils, drawing supplies, notebooks, and related art supplies and accessories. Many of these products are identical or closely related in type, nature, and intended use to goods identified in Plaintiff's federal trademark registrations.

49. Plaintiff's investigation identified 84 pages of product search results on

the Accused Website for the query "Nicpro." *See* **Exhibit A** at 16–454. All displayed listings advertise products under the NICPRO name, including mechanical pencils, carpenter pencils, paintbrushes, acrylic paints, watercolor paints, and related art supplies.

50. **Class 16 Goods.** A substantial portion of the Accused Website's product listings consists of mechanical pencils, carpenter pencils, pencil leads, paintbrushes, drawing brushes, notebooks, and related writing and drawing supplies. These products correspond directly to goods identified in Plaintiff's Registration Nos. 5,585,859 and 6,209,989, including "pencils," "automatic pencils," "pencil leads," "drawing pens," "drawing brushes," "paintbrushes," and "note books." Representative images of these NICPRO-branded Class 16 products displayed on the Accused Website are reproduced below. *See* **Exhibit A**.




Nicpro 38PCS Art Mechanical Pencils Set in Leather Case, 3 PCS Metal Drafting Pencil 0.5, 0.7, 0.9 mm & 5 PCS 2mm Lead Holder (6B 4B 2B HB 2H 4H Colors) For Sketching Drawing With 20 Tube Lead Refills(17PCS)

~~$39.99~~ $23.99

Ex. A at 75




Nicpro 12pcs Face Paint Brushes Set with 9 Sponges Set, Professional Paint Brushes for Face Painting, Body Makeup, Acrylic Watercolor Oil Halloween Cosplay Party, Portable Storage Case Included

~~$13.99~~ $8.39

Ex. A at 88




Nicpro 3 Pack 7-in-1 Magnetic Carpenter Pencils with Sharpener, CP5000 Construction Mechanical Pencil+30 Refill, Deep Hole Marker for Construction, Woodworking Pencil, Carpenter Tools for Marking(Orange Green Red Black)

~~$21.99~~ $13.19

Ex. A at 143

51. **Class 2 Goods.** The Accused Website also advertises numerous NICPRO-branded painting products, including acrylic paints, watercolor paints,

and fabric paints. These products correspond directly to goods identified in Plaintiff's Registration No. 6,582,522, including "paints," "acrylic paints," "watercolor paints," and "fabric paints." Representative acrylic paint products advertised on the Accused Website are shown below. *See* **Exhibit A**.




Ex. A at 95




Ex. A at 369

52. The Accused Website also advertises paint products bearing the NICPRO PAINTS design mark, including the metallic acrylic paints and gold leaf paint shown below. The product packaging displays the stylized "NicPro" wording, four dots, and the word "Paints," corresponding to Plaintiff's Registration No. 7,815,306.




Nicpro Metallic Gold Acrylic Paint, 39oz Large Gold Leaf Paint(39 Fl Oz (Pack of 1))

~~$26.99~~ $16.19

Ex. A at 21




Nicpro Metallic Deep Silver Acrylic Paint, 8.45oz/250ml Large Silver Leaf Paint, Non Toxic, Non Fading Art Craft Paints for Canvas, Wood, Clay, Metal, Furniture, Handcrafts, Art Supplies(Bronze)

~~$9.99~~ $5.99

Ex. A at 23




Nicpro Gold Leaf Paint – 2oz/60ml Metallic Gold Acrylic Paint, Water-Based Non Toxic Non Fading Touch Up Paints for Crafts, Metal, Wood, Clay, Fabric, Canvas, Furniture, Handcrafts, Art Supplies

~~$9.99~~ $5.99

Ex. A at 255

53. Related Goods and Accessories. In addition to goods expressly identified in Plaintiff's registrations, the Accused Website advertises related art, painting, drawing, and organizational products, including craft organizer bags and other accessories. Although these products are not necessarily covered by the specific goods descriptions in Plaintiff's registrations, certain products are complementary to the registered goods and are marketed to overlapping groups of consumers.

**E. Likelihood of Confusion and Injury to Plaintiff**

54. Defendant's unauthorized use of the NICPRO Marks is likely to cause consumer confusion as to the source, sponsorship, affiliation, or approval of the Accused Website. By incorporating NICPRO into its domain name, prominently displaying NICPRO branding throughout the website, advertising products identical or closely related to Plaintiff's registered goods, and reproducing NICPRO-branded product photographs and promotional materials, Defendant creates the

false impression that the Accused Website is owned, operated, or authorized by Plaintiff.

55. Defendant's conduct is also likely to cause initial interest confusion. Consumers encountering the Accused Website may mistakenly believe that it is affiliated with or authorized by Plaintiff and may be drawn to the website on that basis. Such confusion can arise before a consumer reaches checkout and does not depend on the completion of a purchase. Nor is the likelihood of initial interest confusion necessarily eliminated if the consumer subsequently encounters a different commercial name or abandons the transaction.

56. Plaintiff has not authorized Defendant to operate the Accused Website, use the NICPRO Marks to present the website as an official or authorized NICPRO storefront, or otherwise represent an affiliation with Plaintiff.

57. The Accused Website's use of checkout and order-confirmation pages bearing unrelated commercial names, including "Lucy Mirelle" and "FEVER MUSE," does not necessarily dispel the confusion created by the website's initial presentation as a NICPRO-branded storefront. Consumers may mistakenly associate transactions initiated through the Accused Website, including subsequent payment, fulfillment, or customer service experiences, with Plaintiff and its NICPRO brand.

58. Defendant's conduct threatens Plaintiff's goodwill and reputation by misleading consumers regarding the source and authorization of the Accused Website and impairing Plaintiff's ability to control how its brand is presented to

consumers. Upon information and belief, Defendant's conduct is also likely to divert prospective customers from Plaintiff's authorized sales channels and cause continuing injury to Plaintiff's commercial interests and the goodwill associated with the NICPRO Marks.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114(1)**

59. Plaintiff incorporates by reference the foregoing factual allegations as if fully set forth herein.

60. Plaintiff owns valid and subsisting federal registrations for the NICPRO Marks, including U.S. Trademark Registration Nos. 5,585,859, 6,209,989, 6,582,522, and 7,815,306. These registrations cover, among other goods, pencils, automatic pencils, paintbrushes, drawing brushes, notebooks, acrylic paints, watercolor paints, and other painting supplies.

61. Without Plaintiff's consent, Defendant has used in commerce reproductions, copies, or colorable imitations of Plaintiff's registered NICPRO Marks in connection with the advertising and offering for sale of goods through the Accused Website. Defendant's challenged uses include operating a NICPRO-branded storefront directed to U.S. consumers, including consumers in Texas and Illinois, offering NICPRO-branded goods for sale through that storefront, and facilitating orders initiated there, including Plaintiff's documented test purchases for delivery to those States.

62. Defendant's unauthorized use of the NICPRO Marks concerns goods

identical or closely related to those covered by Plaintiff's registrations. The Accused Website also displays the NICPRO PAINTS design mark on advertised paint products, including a metallic gold acrylic paint product bearing the stylized "NicPro" wording, four dots, and the word "Paints," corresponding to Registration No. 7,815,306.

63. Defendant's use of the NICPRO Marks extends beyond identifying individual products. By presenting the Accused Website under the NICPRO name and using Plaintiff's branding and product promotional materials throughout the storefront, Defendant falsely suggests that the Accused Website is owned, operated, sponsored, approved, or authorized by Plaintiff. Defendant's conduct is likely to cause confusion, mistake, or deception among consumers regarding the source, sponsorship, affiliation, or approval of the Accused Website and the products offered through it. Such confusion may arise when consumers first encounter the NICPRO-branded storefront, before completing a purchase or reaching a checkout page bearing a different commercial name.

64. Upon information and belief, Defendant's unauthorized use of the NICPRO Marks has been knowing and intentional, as evidenced by Defendant's adoption of a domain name incorporating NICPRO, its extensive use of NICPRO branding, and its reproduction of NICPRO-branded product photographs and promotional materials throughout the Accused Website.

65. Defendant's conduct constitutes trademark infringement under 15 U.S.C. § 1114(1)(a). Defendant's acts have caused, and unless enjoined are likely to

continue causing, injury to Plaintiff's goodwill, reputation, and commercial interests. Plaintiff seeks relief under the Lanham Act, including appropriate injunctive relief.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN AND FALSE ASSOCIATION**
**15 U.S.C. § 1125(a)(1)(A)**

66. Plaintiff incorporates by reference the foregoing factual allegations as if fully set forth herein.

67. Plaintiff owns and uses the NICPRO Marks in commerce to identify its products and distinguish them from those of others. Through its commercial use and promotion of the NICPRO Marks, Plaintiff has developed goodwill associated with the NICPRO brand.

68. Without Plaintiff's authorization, Defendant has used in commerce the NICPRO name, marks, and associated branding in connection with the advertising and offering for sale of goods through the Accused Website and the facilitation of paid transactions initiated through that website. Defendant's use includes incorporating NICPRO into its domain name, prominently displaying NICPRO branding throughout the website, and reproducing NICPRO-branded product photographs, packaging images, and promotional materials.

69. Through these activities, Defendant has falsely or misleadingly presented the Accused Website as a NICPRO-branded commercial storefront owned, operated, sponsored, approved, or authorized by Plaintiff. Defendant's conduct extends beyond the identification of individual products and creates the misleading

impression of an official or authorized commercial relationship with Plaintiff.

70. Defendant's representations are likely to cause confusion, mistake, or deception among consumers regarding Defendant's affiliation, connection, or association with Plaintiff, and regarding Plaintiff's sponsorship or approval of the Accused Website and its commercial activities. This likelihood of confusion is heightened by the substantial overlap between the products advertised on the Accused Website and the goods offered under Plaintiff's NICPRO Marks.

71. Defendant's conduct is also likely to cause initial interest confusion by attracting consumers seeking Plaintiff or its authorized sales channels to the Accused Website under the mistaken belief that it is affiliated with or authorized by Plaintiff. Such confusion may arise before any purchase is completed and is not necessarily dispelled by the subsequent appearance of unrelated commercial names, including "Lucy Mirelle," "FEVER MUSE," and "Mollysvibe," during the checkout process.

72. Upon information and belief, Defendant knowingly and intentionally adopted the NICPRO name and branding to create the appearance of an affiliation with Plaintiff and to attract consumers to the Accused Website.

73. Defendant's conduct constitutes false designation of origin and false affiliation in violation of 15 U.S.C. § 1125(a)(1)(A). Plaintiff has been and is likely to be damaged by Defendant's conduct, including through threatened injury to its goodwill and reputation, diversion of prospective customers, and impairment of Plaintiff's ability to control the presentation of its brand. Unless enjoined,

Defendant's conduct is likely to continue causing injury to Plaintiff.

**COUNT III**
**CYBERSQUATTING**
**15 U.S.C. § 1125(d)(1)**

74. Plaintiff incorporates by reference the foregoing factual allegations as if fully set forth herein.

75. Plaintiff owns the distinctive NICPRO mark, including U.S. Trademark Registration No. 5,585,859, which issued on October 16, 2018. The NICPRO mark was distinctive before the registration of the domain name nicproartpaint.com (the "Accused Domain").

76. According to publicly available domain registration records, the Accused Domain was created on December 18, 2024, more than six years after Plaintiff's NICPRO mark was federally registered. The Accused Domain incorporates the NICPRO mark in its entirety and merely adds the descriptive term "artpaint," which directly refers to the nature of Plaintiff's products. The Accused Domain is confusingly similar to Plaintiff's distinctive NICPRO mark.

77. Upon information and belief, Defendant operates and controls the Accused Website and is either the registrant of the Accused Domain or the registrant's authorized licensee. Defendant uses the Accused Domain to conduct the commercial activities alleged herein.

78. Defendant has used the Accused Domain to operate a commercial website prominently displaying the NICPRO Marks, advertising products identical or closely related to Plaintiff's registered goods, and reproducing NICPRO-branded

product photographs and promotional materials. The Accused Website presents itself as a NICPRO-branded storefront, creating the false impression that it is owned, operated, sponsored, or authorized by Plaintiff.

79. The Accused Domain has also been used to solicit and facilitate commercial transactions with U.S. consumers. Purchases initiated through the Accused Website resulted in checkout and payment pages bearing unrelated commercial names, including "Lucy Mirelle" and "FEVER MUSE." During the Illinois test purchase, the checkout process passed through listanstyle.com and brinaratrek.top before reaching fevermuse.com. During a separate November 13, 2026 investigative checkout session, the checkout process passed through katrie.site before reaching a "Mollysvibe"-branded checkout page at mollysvibe.com; no payment was completed during that session. *See* **Exhibits I, J** and **Q**.

80. Plaintiff has not authorized Defendant to register or use the Accused Domain or to represent that the Accused Website is owned, operated, sponsored, approved, or otherwise affiliated with Plaintiff.

81. Upon information and belief, Defendant has acted with a bad-faith intent to profit from Plaintiff's NICPRO mark by using the Accused Domain to attract and divert consumers seeking Plaintiff or its authorized sales channels to a commercial website falsely suggesting an affiliation with Plaintiff. Defendant's incorporation of the NICPRO mark into the Accused Domain, extensive use of NICPRO branding and promotional materials, and use of the resulting website to direct consumers to checkout pages bearing unrelated commercial names support

an inference of intentional diversion for commercial gain.

82. Defendant's conduct constitutes cybersquatting in violation of 15 U.S.C. § 1125(d)(1). Plaintiff seeks transfer of the Accused Domain pursuant to 15 U.S.C. § 1125(d)(1)(C).

## COUNT IV
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER TEXAS COMMON LAW

83. Plaintiff incorporates by reference the foregoing factual allegations as if fully set forth herein.

84. Plaintiff owns protectable rights and goodwill in the NICPRO Marks through its use of those marks in connection with its products. The NICPRO Marks identify Plaintiff as the source of goods offered under those marks and distinguish those goods from those of others.

85. Without Plaintiff's authorization, Defendant has used the NICPRO Marks to identify and promote the Accused Website and its commercial activities, including by incorporating NICPRO into the website's domain name, prominently displaying NICPRO branding, and advertising products identical or closely related to Plaintiff's goods. Defendant has directed these commercial activities toward consumers in Texas, including through transactions initiated on the Accused Website for delivery to Texas.

86. Defendant's conduct is likely to cause confusion as to the source, sponsorship, affiliation, or approval of the Accused Website and the products offered through it. By presenting the Accused Website as a NICPRO-branded storefront,

Defendant has falsely suggested that its commercial operations are owned, operated, or authorized by Plaintiff.

87. Defendant's unauthorized use of the NICPRO Marks and its misrepresentation of the Accused Website as an official or authorized NICPRO storefront constitute trademark infringement and unfair competition, including passing off, under Texas common law.

88. Defendant's conduct threatens injury to Plaintiff's goodwill, reputation, and commercial interests. Plaintiff seeks injunctive relief and other remedies available under Texas law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant and the following relief:

A. A judgment that Defendant has infringed Plaintiff's federally registered NICPRO Marks in violation of 15 U.S.C. § 1114(1), engaged in false designation of origin and false affiliation in violation of 15 U.S.C. § 1125(a)(1)(A), violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1), and committed trademark infringement and unfair competition under Texas common law;

B. A preliminary and permanent injunction against Defendant and all persons bound under Federal Rule of Civil Procedure 65(d)(2) who receive actual notice of the injunction, prohibiting them from:

1. Using the NICPRO Marks, or any confusingly similar designation, in domain names, websites, online storefronts, product listings, advertising, or

other commercial activities in a manner likely to cause confusion as to source, sponsorship, affiliation, or approval;

2. Representing or suggesting that Defendant or any website, online storefront, or commercial operation under Defendant's control is owned, operated, sponsored, approved, or authorized by Plaintiff; and

3. Using the Accused Domain or any other domain name, website, or online storefront under Defendant's ownership or control to infringe Plaintiff's NICPRO Marks or falsely suggest an affiliation with Plaintiff;

C. An order pursuant to 15 U.S.C. § 1125(d)(1)(C) directing the transfer of the domain name nicproartpaint.com to Plaintiff;

D. An order requiring Defendant to remove or correct infringing or misleading content within its possession or control, including website content, product listings, advertisements, and promotional materials, and to submit appropriate removal or correction requests to third-party platforms or service providers regarding such content supplied by Defendant, subject to preservation of evidence relevant to this action;

E. An order requiring Defendant to file with the Court and serve on Plaintiff, within thirty days after service of the injunction, a written report under oath detailing its compliance, pursuant to 15 U.S.C. § 1116(a);

F. An accounting and award of Defendant's profits and Plaintiff's damages recoverable under 15 U.S.C. § 1117(a), including any enhancement or adjustment authorized by that provision, together with any damages recoverable under Texas

common law, without duplicative recovery;

G. Alternatively, to the extent Plaintiff elects statutory damages for its cybersquatting claim, an award of statutory damages under 15 U.S.C. § 1117(d), in lieu of actual damages and profits for that claim;

H. Delivery up and destruction of infringing labels, packaging, advertisements, and other materials within Defendant's possession, to the extent authorized by 15 U.S.C. § 1118 and subject to preservation of evidence relevant to this action;

I. A determination that this is an exceptional case and an award of reasonable attorneys' fees under 15 U.S.C. § 1117(a), together with Plaintiff's recoverable costs;

J. Prejudgment and postjudgment interest to the extent permitted by law;

K. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Dated: November 16, 2026

Respectfully submitted,

/s/ Tao Liu

Tao Liu
State Bar No. 5741665NY
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY 10010
Telephone: (212) 937-9999
Email: tao.liu@glacier.law

***Counsel for Plaintiff***